IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FOLSOM METAL PRODUCTS, INC.,   )
                                 )

           Plaintiff,         )
                                 )

      v.                        )   CIVIL ACTION NO. 94-G-0988-S
                                 )

TORUS EQUIPMENT COMPANY,     )
                                 )

          Defendant.       )
======================   )
                                 )

RBOP TOOLS INTERNATIONAL, INC., )
                                 )

      Intervenor-plaintiff.    )

******************************       <u>CONSOLIDATED WITH</u>:

FOLSOM METAL PRODUCTS, INC.,   )
                                 )

           Plaintiff,         )
                                 )

      v.                        )   CIVIL ACTION NO. 99-G-0003-S
                                 )

RBOP TOOLS INTERNATIONAL, INC., )
                                 )

          Defendant.       )

<u>MEMORANDUM OPINION</u>

This cause is before the court upon three pending motions for summary judgments.  RBOP Tools[1] has moved for summary judgment with respect to its liability to Torus and also with respect to its liability for prejudgment

---

[1]  The court will refer to the parties using the conventions noted in it's prior opinions.

interest in the event it is found liable to Torus.  Torus has moved for summary

judgment with respect to its entitlement to prejudgment interest.

## I.

RBOP Tools asserts that it is not liable to Torus based upon this

court's previous rulings.  This court has previously held that RBOP Tools is not

liable to Torus based upon an implied assumption of Folsom's contractual

obligations to Torus arising out of the sales agreement.[2]  (Memorandum Opinion,

Sept. 2, 1998, at 31-35.)  Under Alabama law, RBOP Tools would only be

required to fulfill the burden's imposed on Folsom under that contract if it sought

to enforce the executory terms of that contract against Torus:

> [A]n assignment ordinarily does not impose on the assignee the
> personal duty to fulfill the obligations imposed by the contract on his
> assignor.  But if he brings action on the instrument his right is limited
> by the burdens and obligations which his assignor thereby assumed.

Loegler v. C.V. Hill & Co., 238 Ala. 606, 193 So. 120, 121 (1940).  This court

previously noted the possibility that RBOP Tools might chose not to enforce the

executory provisions of the Sales Agreement, and the impact such choice would

have on RBOP Tools liability to Torus:

---

[2]  The sales contract between Torus and Folsom consisted of the original sales agreement
as modified by the "Settlement Agreement and Mutual Release."  References to the sales
contract, sales agreement or the like will refer to the two documents collectively.

2

RBOP Tools might deem its position in the market so secure that it would refuse to pay the Additional Amount even if Folsom fails to do so, even though that would mean Torus might resell the RBOP technology or even compete against RBOP Tools.

(Memo. Opinion, Sept. 2, 1999, at 23, n. 20.)

It is undisputed that RBOP Tools has not sought to enforce, by action or otherwise, any of the executory terms of the Sales Agreement between Torus and Folsom.  (Torus's Br., Doc. # 195, at 3)(not disputing paragraphs 14 through 33 of RBOP Tools' statement of undisputed facts); (Torus's Br., Doc. # 195, at 9)("RBOP Tools argues in its Brief in support of its Motion for Summary Judgment, that it has not sought to enforce any of Torus' executory obligations. That is true.").  Based upon this undisputed fact, RBOP Tools is not liable to Torus as a matter of law.  Accordingly, RBOP Tools is not liable to Torus for prejudgment interest.

## II.

Under Alabama law, prejudgment interest is allowed in contract actions.  Alabama Code Section 8-8-8 provides that:

All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed.

3

Alabama courts have interpreted this statute to mean that prejudgment interest is

recoverable in contract actions when the amount of damages resulting from the

breach are either certain or can be made certain as of the time of breach.

> This statute has been interpreted to mean that "in contract cases,
> where an amount is certain or can be made certain as to damages at
> the time of breach, the amount may be increased by the addition of
> legal interest from that time until recovery."  C. Gamble, Alabama
> Law of Damages, § 8-3 (2d. ed. 1988); citing Tennessee Coal, Iron &
> R. Co. v. Jourdan, 221 Ala. 106, 128 So. 132 (1930); Jefferson
> County v. City of Birmingham, 235 Ala. 199, 178 So. 226 (1938);
> Roe v. Baggett Transportation Co., 326 F.2d 298 (5th Cir.1963); and
> Belcher v. Birmingham Trust Nat'l Bank, 488 F.2d 474 (5th Cir.1973).
> And "[a]ll liquidated demands for a sum certain, fixed by agreement
> or otherwise, bear interest from the time the party becomes liable and
> bound to pay them." C. Gamble, supra, § 8-7; citing Ala. Code 1975,
> § 8-8-8.

Miller and Co. Inc, v. McCown, 531 So. 2d 888, 889 (Ala. 1988).  The McCown

court and others have relied heavily on Dean Gamble's  treatise.  Section 8-7 of

Alabama Law of Damages, partially quoted by the McCown court, in its entirety

states as follows:

> All liquidated demands for a sum certain, fixed by agreement or
> otherwise, bear interest from the time the party becomes liable and
> bound to pay them.  Dean McCormick gave the following description
> of such a demand:
>
> > A claim is liquidated if the evidence furnishes data which, if
> > believed, makes it possible to compute the amount with
> > exactness, without reliance upon opinion or discretion.
> > Examples are claims upon promises to pay a fixed sum, claims

4

> for money had and received, claims for money paid out, and
> claims for goods or services to be paid for at an agreed rate.

C. Gamble, <u>Alabama Law of Damages</u> § 8-7 (quoting Charles Tilford McCormick,

<u>Handbook on the Law of Damages</u> § 54 (1935)).

Prejudgment interest is not allowed when the measure of damages

may not be ascertained, or when damages are discretionary.  "Damages are

discretionary when, as for pain and suffering, they are to be measured only by the

enlightened conscience of impartial jurors."  C. Gamble, <u>Alabama Law of</u>

<u>Damages</u> § 8-2.

The Eleventh Circuit has stated the Alabama rule as follows:

> The cases establish that prejudgment interest is appropriate "when the
> damages are complete at a particular time and can be determined as of
> such time in accordance with fixed rules of evidence and known
> standards of value." <u>Belcher v. Birmingham Trust National Bank</u>, 488
> F.2d 474, 477 (5th Cir. 1973). <u>See</u> <u>Mobile & Ohio Railroad v.</u>
> <u>Williams</u>, 219 Ala. 238, 121 So. 722, 730 (1929); <u>Atlanta &</u>
> <u>Birmingham Air Line Railway v. Brown</u>, 158 Ala. 607, 48 So. 73
> (1908).

<u>Shook & Fletcher Insulation v. Central Rigging</u>, 684 F.2d 1383, 1386 (11th Cir.

1982).

These abstract rules of law can best be understood by examining how

they have been applied in contract cases factually similar to the present case.  In

<u>Shook & Fletcher</u>, there was a dispute about an insulation subcontractor's

entitlement to receive additional compensation for work performed beyond the

requirements of the subcontract.  684 F.2d at 684.  The trial court found the

subcontractor was entitled to payment for that work, but did not award

prejudgment interest.  Id. at 684-85.  The court of appeals reversed the denial of

prejudgment interest.  The court observed that the rule in Alabama on prejudgment

interest does not require the amount of damages to be beyond dispute:

> There is no dispute in the present case that the damages were
> complete as of the date when Shook & Fletcher billed Central
> Rigging for the extra work performed. Central Rigging argues,
> however, that the unit price and the quantity of insulation installed
> were both contested at trial. Reply Brief of Appellant/Cross-appellee
> at 23.
>
> Even if Central Rigging's assertion is true, this would not defeat
> Shook & Fletcher's right to recover prejudgment interest. The
> Alabama cases do not impose as a prerequisite to obtaining
> prejudgment interest that the amount of damages be beyond dispute;
> rather, the cases only require that the amount of damages be
> "ascertainable."

Id. at 1386-87.  The court of appeals ultimately found  Shook & Fletcher was

entitled to prejudgment interest:

> The damages sought by Shook & Fletcher to redress Central
> Rigging's breach of contract could be ascertained, as indeed they
> were, "in accordance with fixed rules of evidence and known
> standards of value."  [The dispute over the per unit price of the extra
> insulation could be resolved as a matter of contract interpretation, and
> the amount of extra insulation actually installed was determined by a
> factual inquiry.]

6

Id. at 1387 (Footnote inserted and bracketed) (emphasis added).  Shook & Fletcher

demonstrates that neither questions of contract interpretation, nor the necessity for

factual inquiry precludes an award of prejudgment interest.

Lapeyrouse Grain Corp. v. Tallant, 439 So. 2d 105 (Ala. 1983),

involved the premature sale of wheat by Montgomery Grain Corporation, who

held the plaintiff's wheat.  The plaintiff's assertion was that they could have sold

the wheat for a higher price at a later time.  The evidence at trial included four

different wheat prices, upon which a price differential could be computed.  On

appeal, the Alabama Supreme Court found prejudgment interest should be

awarded.  The court noted that prejudgment interest is allowed in Alabama in

contract actions under Section 8-8-8 and also in tort actions when the damages are

considered liquidated.  Under either rule, the court found prejudgment interest

should be awarded.   The court observed that "[o]nce the jury reached a factual

conclusion from the evidence as to the price differential, the compensatory loss

could be fixed by a simple mathematical computation...."  Id. at 112.

In Lapeyrouse, the amount of damages was related to fluctuations in

the market price of wheat between the time of the breach (the improper premature

sale) and trial.  Therefore, it was impossible, *even in theory*, to determine the

amount of damages at the time of breach.  However, once the price differential

was determined by the jury, the measurement of damages was simply a matter of calculation.  In <u>Lapeyrouse</u>, Montgomery Grain could not possibly have known at the time of the breach the amount of damages that it would ultimately be found to owe.

<u>Miller and Co., Inc. v. McCown</u>,  involved an action by landowners against Miller and Company, Inc. ("Miller"), a timber buying and cutting company.  The landowners alleged that Miller cut unmarked trees and timber that was within 150 feet of a river bank.  Both of these actions violated the terms of the contract between Miller and the landowners.  The contract contained a liquidated damages provision, which provided for payment at varying rates depending upon the diameter and type of tree.  The payment rates were based upon the volume of lumber in each unmarked tree.[3]  This meant that in order to calculate the damages from the cutting of unmarked trees, it was necessary to know how many trees were improperly cut, and also to know the volume of each tree.   The trial court referred the matter to a special master "due to the 'complicated' and 'exceptional' issues and 'specific problems in the area of timber cruises and the timber business.'"  531

---

[3]  The volume was to be measured in either board feet or cords, depending upon the species and size of the improperly cut tree.

So. 2d at 889.  Following findings by the special master as to the amount of

damages, the trial court entered a judgment that included prejudgment interest.

On appeal, Miller argued the award of prejudgment interest was

improper because the amount due the landowners was uncertain.  Miller's

arguments (which are very similar to those made by Folsom in the present case)

were as follows:  "In sum, Miller argues that 'the amount due Landowners in this

case was anything but certain and the amount was clearly not known to Miller.'"

Id. at 889.  The following quotation from McCown shows just how complicated

the determination of damages was:

> The master studied reports on unauthorized cutting submitted by the
> landowners and Miller.  Acknowledging that the "plaintiffs' and
> defendant's timber volume scenarios have extreme differences in the
> estimate of initial volume, marked volume, cut volume, and
> remaining volume," the master concluded that "volumes calculated
> from a stump cruise can be reasonably accurate," and utilized the
> landowners' "cruise" of unmarked stumps to determine the number
> and volume of unmarked trees cut.

Id. (emphasis added).  In spite of the complexity involved in determining the

number and volume of unmarked trees after they had been cut, the Alabama

Supreme Court rejected Miller's arguments.  Though the process of determining

the volume of improperly cut trees was complicated, once that volume was

determined, all that was required was a simple calculation.  The court observed:

9

> Once the master reached the factual conclusion from the evidence as to the volume of unmarked and unauthorized trees cut, the loss to the landowners could be fixed by a simple mathematical computation by reference to the liquidated damages provisions of the contract. See Lapeyrouse Grain Corp. v. Tallant, 439 So. 2d 105 (Ala.1983). Therefore, the amount of damages could be made certain at the time of breach. The trial court correctly increased the amount by the addition of legal interest from that time until recovery and properly denied Miller's post-judgment motion for relief.

Id. at 889-90.

Applying the above law to the present case, the court readily concludes that, under Alabama law, Torus is entitled to prejudgment interest on the unpaid Additional Amounts[4] due under the sales contract.[5] Folsom argues that prejudgment interest should not be awarded in the present case because the amount due Torus was uncertain. However, both the amount and date these sums were due to be paid are readily determinable based upon the formula for computing the Additional Amount set forth in the contract for sale between Torus and Folsom. The factual determinations necessary to establish the amount of prejudgment interest due in this case are not as complex as in McCown. McCown required a determination of the volume of trees improperly cut by examining the

---

[4] The court will continue its use of "Additional Amounts" to refer to the sums due Torus upon the sale or rental of RBOP units.

[5] The interpretation and application of Ala. Code § 8-8-8 is a question of law. McCown, at 889.

10

stumps of the improperly cut trees left after the trees had been harvested.  The

determination of the Additional Amount by the special master in the present case

involved much less uncertainty.

In McCown, there were extreme differences between the plaintiff's

and defendant's estimates of the volume.  McCown, at 889.  In the present case,

the computations of the Additional Amount by RBOP Tool's accountant and

Torus's expert were within a few pennies of each other.  This shows that the

Additional Amount was subject to calculation to a much higher degree of certainty

than in McCown.

The present case falls squarely within the holdings of Shook &

Fletcher , Lapeyrouse Grain, and McCown.   Therefore, the court concludes that

under Alabama law, Torus is entitled to an award of prejudgment interest against

Folsom with respect to the Additional Amount.

The contract between the parties does not specify a prejudgment

interest rate.  Therefore, the legal rate of interest, set out in Ala. Code § 8-8-1

applies.  Lapeyrouse Grain at 112.  That rate is six percent per annum.  Torus's has

submitted the affidavit of Steve Ratliff, a Certified Public Accountant, to prove the

amount of prejudgment interest calculated at the rate of six percent per annum.

Folsom does not dispute the calculations performed by Mr. Ratliff.  (Folsom's

<u>Objection  to Torus's Motion for Partial Summary Judgment</u> [Doc. # 203] at p. 2,

n. 2.)  Mr. Ratliff's calculations establish that the amount of prejudgment interest

due on the Additional Amounts through and including July 31, 2005, is

$373,084.05.  (Ratliff Aff. at ¶ 9.)  Mr. Ratliff's calculations establish that the per

diem rate after that date is $136.31.  (Ratliff Aff. at ¶ 8.)  There being no genuine

issue of fact as to these calculations, Torus is entitled to an award of prejudgment

interest based upon these amounts as a matter of law.

## CONCLUSION

Both of RBOP Tools' motions for summary judgment are due to be

granted.  Torus's motion for summary judgment on the issue of prejudgment

interest is due to be granted as it relates to Folsom and denied as it relates to

RBOP Tools.  An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 5 September 2006.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

12